# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02008-COA

JAMES THOMAS A/K/A JAMES D. THOMAS                    APPELLANT

v.

STATE OF MISSISSIPPI                    APPELLEE

DATE OF JUDGMENT:           11/05/2013
TRIAL JUDGE:                HON. LEE J. HOWARD
COURT FROM WHICH APPEALED:  OKTIBBEHA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     JIM DAVIS
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: LISA L. BLOUNT
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:    DENIED MOTION FOR POST-
                            CONVICTION RELIEF
DISPOSITION:                AFFIRMED - 04/21/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**LEE, C.J., FOR THE COURT:**

FACTS AND PROCEDURAL HISTORY

¶1.     On April 17, 2012, James D. Thomas pleaded guilty in the Oktibbeha County Circuit Court to sexual battery. Thomas was sentenced to twenty-seven years to serve in the custody of the Mississippi Department of Corrections (MDOC). On April 4, 2013, Thomas filed a motion for post-conviction relief (PCR). After an evidentiary hearing, the trial court denied his PCR motion. Thomas now appeals, asserting the following issues, which we have reordered for clarity: (1) there was no factual basis to support his plea, (2) his plea was

involuntary, (3) he met his burden of proof, (4) his counsel was ineffective, and (5) trial courts have a duty to inform criminal defendants of their parole eligibility before accepting pleas.

## STANDARD OF REVIEW

¶2. When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if it is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review. *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012).

## DISCUSSION

### I. FACTUAL BASIS

¶3. Thomas argues that there was no factual basis to support his sexual-battery plea because there was no evidence of penetration. According to Uniform Rule of Circuit and County Court Practice 8.04(A)(3), "[b]efore the trial court may accept a plea of guilty, the court must determine . . . that there is a factual basis for the plea." The trial court must be able to "say with confidence [that] the prosecution could prove the accused guilty of the crime charged . . . ." *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991).

¶4. "Penetration is the very essence of the crime of sexual battery." *Johnson v. State*, 626 So. 2d 631, 632 (Miss. 1993) (citations omitted). Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014) states that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Mississippi Code

2

Annotated section 97-3-97 (Rev. 2014) defines "sexual penetration" for the purposes of section 97-3-95 as "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body."

¶5. At Thomas's plea colloquy, the trial court read the indictment as follows:

> [Y]ou, James D. Thomas, a person above the age of 18 years on or about the 18th day of July, 2003, in Oktibbeha County, Mississippi, did willfully, unlawfully and feloniously engage in sexual penetration with [D.D.[1]], a child of the age of 11 years; and that you, James D. Thomas, were at least 24 months older than [D.D.], her date of birth being July the 22nd of 1991 and your date of birth being September the 19th of 1937, by licking her private parts.

When the trial court finished, he asked if Thomas was guilty of this offense, to which Thomas replied he was. The trial court then asked the State for the factual basis for the plea. The State stated:

> [I]n the event of a trial, the State would offer evidence to show that on the date alleged in the indictment, the 18th of July, 2003, [D.D.], who was 11 years old at the time, was living here in Oktibbeha County, Mississippi, with her parents and sisters. Her grandparents were in town for several weeks helping the family out after her mother had had some surgery. On the 18th of July, 2003, late in the evening, she went into her parents'[ ] bedroom and told them that her grandfather, who was Mr. James D. Thomas, had licked her vagina. The police were called. They responded to the scene. Mr. Thomas gave a statement to the responding officer that he had committed a bad act. He did not get terribly specific but said he had put his mouth in an inappropriate place on [D.D.] He was later transported to the police department where Detective Henry Stewart took a detailed statement from him in which he confessed to licking the vagina of [D.D.] At the time that this occurred, he was over the age of 18; was more than 24 months older than [D.D.] and was not her spouse.

The trial court found that the State had provided a sufficient factual basis to support the

---

[1] We use initials to protect the identity of the minor victim. The child's family members will be identified only by first names.

charges contained in the indictment and accepted Thomas's guilty plea.

¶6.    In Thomas's plea petition, he admitted that he licked his granddaughter's vagina.  On appeal, Thomas does not challenge the validity of his admission.  He merely argues that licking his granddaughter's vagina does not constitute sexual penetration.  "In its true sense, 'cunnilingus' means stimulation by tongue or lips of any part of a woman's genitalia and does not require actual penetration." *Johnson*, 626 So. 2d at 633 (citation omitted).  "Under our sexual battery statutes, . . . union or contact between a person's mouth and the genital opening of a woman is the equivalent of 'sexual penetration.'" *Id*.  Therefore, "proof of contact, skin to skin, between a person's mouth, lips, or tongue and the genital opening of a woman's body, whether by kissing, licking, or sucking, is sufficient proof of 'sexual penetration' through the act of 'cunnilingus' within the meaning and purview of [section] 97-3-97(a)[.]" *Id*. at 633-34.  Since Thomas admitted to licking his granddaughter's vagina, there was sufficient proof of sexual penetration.

¶7.    Thomas points out that in D.D.'s statement to the police, she stated that Thomas never penetrated her.  D.D.'s medical records also indicate that she told hospital staff that no penetration occurred.  While D.D. may have said that, she was an eleven-year-old girl who could not have been expected to know that cunnilingus constitutes sexual penetration.  This issue is without merit.

        II.    VOLUNTARINESS OF PLEA

        III.    BURDEN OF PROOF

¶8.    Thomas argues his plea was involuntary because his counsel misinformed him

regarding his parole eligibility, and he relied on this information when he pleaded guilty. He argues that he met his burden of proof at the evidentiary hearing by showing the facts necessary for relief by a preponderance of the evidence.

¶9.     "A plea of guilty is not binding upon a criminal defendant unless it is entered voluntarily and intelligently." *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992) (citation omitted). "A plea is deemed 'voluntary and intelligent' only where the defendant is advised concerning the nature of the charge against him and the consequences of the plea." *Id*. "Early release and parole are matters of legislative grace and are not consequences of a guilty plea." *Robinson v. State*, 964 So. 2d 609, 613 (¶16) (Miss. Ct. App. 2007) (citing *Shanks v. State*, 672 So. 2d 1207, 1208 (Miss. 1996)). "However, a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Thomas v. State*, 881 So. 2d 912, 916 (¶10) (Miss. Ct. App. 2004) (citing *Fairley v. State*, 834 So. 2d 704, 706 (¶8) (Miss. 2003)). "The burden of proving that a guilty plea is involuntary is on the defendant and must be proven by preponderance of the evidence." *House v. State*, 754 So. 2d 1147, 1152 (¶25) (Miss. 1999). We "must examine the entire record and accept 'that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact.'" *Goodin v. State*, 102 So. 3d 1102, 1111 (¶30) (Miss. 2012) (citations omitted). "That includes deference to the [trial] judge as the sole authority for determining credibility of the witnesses." *Id.* (citations and internal quotation marks omitted).

¶10. In Thomas's affidavit, which was attached to his PCR motion as an exhibit, Thomas stated that his trial counsel, Rodney Ray, advised him that he was going to walk out of the courtroom a free man and that he believed Ray when he told him that. Thomas stated that Ray told him he could go to trial and receive a ten-year sentence or enter an open plea and receive two to four years. Thomas stated that Ray told him that because of his medical condition, he would be eligible for early release, and since he had already served two and a half years, he would probably be released the day of sentencing. Thomas's wife and daughter, Katherine and Michele, respectively, both submitted affidavits. Katherine met with Ray the day before sentencing, and both met with Ray the day of sentencing. They both stated in their affidavits that Ray advised them that he expected Thomas to receive a two-to four-year sentence. Michele also stated in her affidavit that Ray told her he might even be released the day of sentencing. She stated that Ray said that, at worst, Thomas could receive up to seven years.

¶11. Thomas testified to the same at an evidentiary hearing held for the purpose of determining whether counsel misinformed Thomas regarding parole and whether Thomas relied on that misinformation. When asked if he relied on the misinformation, Thomas answered affirmatively and said he would not have entered a guilty plea if he had known he was not parole eligible. He testified that the only reason he entered a guilty plea was because he believed he would be getting out of jail shortly thereafter. Thomas testified he never thought he would get a life sentence and that he thought thirty years was the maximum.[2] He

---

[2] A sexual-battery conviction carries a minimum sentence of twenty years and a maximum sentence of life imprisonment. Miss. Code Ann. § 97-3-101(3) (Rev. 2014).

6

testified that he did not recall the trial court informing him of the minimum and maximum sentences and that he was only cognizant of the fact that he was pleading guilty to the crime of sexual battery. Katherine and Michele also testified at the evidentiary hearing. They testified that Ray told them that, at best, Thomas would receive a two-to four-year sentence or time served and that, at worst, he could receive up to seven years, but would be released within a few months on parole because of his age and health. They testified that they talked with Ray about getting Thomas into a trustee program that would allow him to spend weekends at home out on parole.

¶12. At Thomas's plea colloquy, the trial court asked Thomas if he understood that it must sentence him to no less than twenty years nor more than life imprisonment, to which he answered yes. The trial court queried Thomas about his written petition to enter a plea of guilty:

> [Trial court]: There is a written petition to enter a plea of guilty in the court file. You say Mr. Ray filled this out for you?
>
> [Thomas]: Yes.
>
> [Trial court]: Did he go over it with you and explain it to you?
>
> [Thomas]: Yes.
>
> [Trial court]: Do you have any questions about anything contained in the petition that you did not understand that you wish for me to explain to you?

[Thomas]: No.

He was also asked if anyone promised him anything or threatened him to get him to sign the petition or enter a plea of guilty, to which he answered no.

¶13. Thomas's plea petition, which was signed and sworn to, stated the minimum and maximum sentences he could receive. The plea petition also stated the following:

> My lawyer has advised me as to the probabilities of my conviction on the charges with which I am charged and thoroughly discussed all aspects of my case with me. My lawyer has made no threats or promises of any type or kind to induce me to enter this plea of guilty, however; and the decision to seek the entry of this plea was my own and mine alone, based on my own reasons and free from any outside coercive influences.
>
> . . . .
>
> I believe that my lawyer has done all that anyone could do to counsel and assist me. I AM SATISFIED WITH THE ADVICE AND HELP HE/SHE HAS GIVEN ME; I recognize that I have been told by my lawyer that I might receive probation or a lighter sentence[;] that is merely his/her prediction and is not binding on this Court.

¶14. At his sentencing hearing, Thomas gave three reasons for pleading guilty to the crime of sexual battery. First, Thomas stated he wanted to take responsibility for what he had done to his granddaughter. Second, he wanted to "try to heal things up." And third, he did not want to further traumatize his granddaughter by going to trial. Thomas was asked about having fled the country the night before his trial in October 2004. Thomas testified that when he was unable to get in contact with his attorney, he panicked. He testified, "I was facing the possible life sentence. It was 30 to life."

¶15. Prior to accepting his plea, the trial court found that Thomas understood the nature and consequences of his plea, including the maximum and minimum sentences required by

8

law. It also found that Thomas's guilty plea was freely and voluntarily made.

¶16. Ray testified at the evidentiary hearing. He testified that prior to rendering legal services, he informed Thomas that he could not guarantee an outcome. This language also appears in the contract for legal services, which was signed by Thomas. Ray testified that as they were preparing for trial, he met with the prosecutor and learned how articulate D.D. was. When Ray relayed that information to Thomas, he asked Ray what kind of a deal he could get him. Ray advised Thomas that he would not want what the prosecutor had to offer and that it would be best to enter an open plea and ask for leniency. Ray advised Thomas that the best way to ask for leniency was to apologize and ask the court to consider his age and health. Ray testified that he told Thomas there were no guarantees of leniency. Ray specifically denied telling Thomas that he would receive a minimum of two to four years and a maximum of seven. He testified that he did tell Thomas he would get credit for time served and that, hopefully, after asking for leniency, he would get "seven, ten, fourteen years." When asked about having said "seven, ten, fourteen years" on cross-examination, all of which are under the statutory minimum, Ray answered that part of the sentence could be suspended. He testified that he did not believe he would have told Thomas two years because he had never seen the trial court give anyone two years for the crime of sexual battery.

¶17. Ray testified that he explained everything in Thomas's plea petition to him, including the minimum and maximum sentences he could receive and what was meant by an open plea. He testified there was nothing to indicate Thomas did not understand the statutory minimum

and maximum. Ray testified that he told Thomas that sentencing was up to the trial court, and that the trial court was not bound by any recommendation, even if there was one. He testified that not only did he tell Thomas the minimum and maximum sentences he could receive, but Thomas was also informed of the statutory minimum and maximum by the trial court during his plea colloquy. Again, Ray testified that there was nothing to indicate Thomas did not understand what the trial court said. Ray testified that he never told Thomas or his family that sexual battery was a parolable offense, and specifically denied using the words parole or early release when discussing the mitigating factors of age and health. When asked if he informed Thomas that sexual battery was a nonparolable offense, Ray answered, "[I am] sure I did." He testified that he told Thomas that he might get to the MDOC and find that MDOC would not want to deal with him given his age and health, and release him. Ray testified he told Thomas: "Hopefully your sickness would make them want to get rid of you at some point. I [did not] guarantee or tell him that that would happen. I said his health would help both in the mitigation, in the hearing, as well as anything down the road."

¶18. Ray testified that he did not remember meeting with Katherine the day before sentencing. He testified that he met with Katherine and Michele the morning of sentencing, but denied telling them that the worst sentence Thomas could receive was seven years. Ray testified that he met with Katherine and Michele after sentencing and that he told them he was going to try to get Thomas moved to another facility so he could be a trustee. He testified that he had a couple of other sex-offender clients who are trustees. Ray testified that he called the sheriff of Clay County about moving Thomas to his facility, but nothing

10

resulted from that phone call.

¶19.    After a review of the record and having considered the testimony and demeanor of all of the witnesses at the evidentiary hearing, the trial court found Ray's testimony to be highly compelling, reliable, and supported by the contract for legal services, the sworn plea petition, and the plea colloquy.  The trial court found that Ray did not misinform Thomas about his eligibility for parole, and because Ray did not misinform Thomas, Thomas could not have relied on the alleged misinformation when he pleaded guilty.  The trial court made note of Thomas's conflicting testimony regarding his reasons for pleading guilty, the possibility of parole not being one of them, at the original sentencing hearing.  It also found it highly unlikely that Thomas, a Doctor of Philosophy in mathematics, would sign documents without reading them, as was his testimony at the evidentiary hearing.  Thomas testified at the evidentiary hearing that he did not read the plea petition and that he did not read the contract for legal services carefully.

¶20.    We cannot say the trial court's factual findings were clearly erroneous.  The trial court found Ray's testimony to be credible and supported by the contract for legal services, the sworn plea petition, and the plea colloquy.  While Thomas's wife's and daughter's testimonies corroborated Thomas's, Thomas's testimony at the evidentiary hearing often came into direct conflict with his testimony at his plea colloquy.  He gave conflicting reasons for pleading guilty and testified at the evidentiary hearing that he thought thirty years was the maximum sentence he could receive.  During his plea colloquy though, he stated that he understood the statutory minimum and maximum, and even stated at sentencing that the

11

reason he fled the country in 2004 was because he was facing a possible life sentence. "Solemn declarations in open court carry a strong presumption of verity." *Richardson v. State*, 769 So. 2d 230, 234 (¶6) (Miss. Ct. App. 2000) (citation omitted). "[P]lea petition[s], similarly to statements in open court, may be used to discredit post-plea allegations." *Ward v. State*, 879 So. 2d 452, 455 (¶11) (Miss. Ct. App. 2003). By signing his plea petition, Thomas acknowledged the minimum and maximum sentences he could receive. He also acknowledged that while his attorney may have said he might receive probation or a lighter sentence, that was merely a prediction, and the trial court was not bound by this. The trial court found that given Thomas's educational background, it was highly unlikely he did not read the plea petition before signing it. The trial court also found that Thomas's level of involvement in filing pro se motions in his original criminal cause was "inconsistent with someone who would sign legally binding documents without first reading them." We cannot say the trial court's findings were clearly erroneous. This issue is without merit.

IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

¶21.    Thomas also argues that because he was misinformed regarding his parole eligibility, he received ineffective assistance of counsel. In order to succeed on a claim of ineffective assistance of counsel, the defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "In the context of guilty pleas, this means the defendant must show that, were it not for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Burrough v. State*, 9 So. 3d 368, 375 (¶22) (Miss. 2009) (citation omitted).

Having found that the trial court did not err in finding that Ray did not misinform Thomas regarding his parole eligibility, Ray's performance was not deficient. Without a deficient performance, it could not have prejudiced the defense. This issue is without merit.

## V. TRIAL COURT'S DUTY TO INFORM OF PAROLE ELIGIBILITY

¶22. We note that Thomas contends that trial courts should be required to inform criminal defendants if they will not be eligible for parole before accepting their guilty pleas. However, the law is well settled that a trial court is not required to inform a defendant of parole eligibility. *Stewart v. State*, 845 So. 2d 744, 747 (¶11) (Miss. Ct. App. 2003) (citing *Ware v. State*, 379 So. 2d 904, 907 (Miss. 1980)). This issue is without merit.

¶23. **THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**